448 So.2d 1260 (1983)
STATE of Louisiana
v.
John VAUGHN.
No. 82-KA-1775.
Supreme Court of Louisiana.
October 17, 1983.
Dissenting Opinion October 28, 1983.
Concurring Opinion November 7, 1983.
On Rehearing April 2, 1984.
Rehearing Denied May 3, 1984.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., G. Earl Humphries, Asst. Dist. Atty., for plaintiff-appellee.
James S. Gravel, Harold A. Van Dyke, Gravel & Van Dyke, Alexandria, for defendant-appellant.
DENNIS, Justice.[*]
We are called upon in this case to decide whether the Confrontation Clauses require that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness, by cross-examination directed at an established pattern of her prior sexual conduct which tended to prove that she also consented to the conduct in issue, when such an impeachment would conflict with the state's asserted interest in the encouragement of rape victims to report crimes and cooperate in prosecutions.
Defendant, John Vaughn, was indicted with aggravated rape, convicted by a jury of forcible rape, and sentenced to 15 years at hard labor, five years of which are without benefit of parole, probation or suspension of sentence. Defendant appealed. *1261 We reverse, finding merit in his confrontation claim.
Defendant contends that he was denied his right to confront and cross-examine witnesses by the trial court's preclusion of his cross-examination of the rape complainant about her prior sexual conduct. He argues that this constitutes reversible error because it prevented the introduction of evidence which, together with the complainant's other admissions, would have shown that the sexual intercourse in question was with her consent. In order to convict of aggravated rape, the state must prove that the sexual intercourse was committed without the victim's consent. La.R.S. 14:41, 42.
About two weeks before the alleged offense the 15 year old female complainant ran away from home. She had lived with her mother who ran a lounge with a boyfriend in Shreveport. After staying with some friends for about a week in Shreveport, the complainant left that city on Friday, September 12, 1980 with Bret Holden, whom she had met that day at a K-Mart, and a girl friend. Holden told the two young women that he was going to Alexandria and that he could find them a place to stay there. The trio hitched a ride with a trucker and eventually arrived in Alexandria. After reaching Alexandria the complainant spent at least one night in a cabin with Holden and another man. On Sunday, a couple with whom she had become acquainted took her to see the defendant Vaughn for the purpose of obtaining more permanent lodging. Vaughn permitted her to move into his house, provided her with food, and allowed her to call her mother on his telephone without giving her location. Vaughn also obtained an apartment which the complainant and another woman used during the day. At night, however, the complainant returned to Vaughn's house where she voluntarily slept with him and two other women in the same bed.
The complainant admitted in her cross-examination that she had sexual intercourse with Vaughn on the night of September 15 and that she consented to the sexual act. She testified that during the early morning hours of September 18, however, she resisted his sexual advances, and that he forced her to have sexual intercourse without her consent by kicking her, knocking her against a dresser and pulling her hair. She further testified that later that evening she again consented to sexual intercourse with Vaughn, but she said that she consented only because she feared another beating. During the day on September 18, after the early morning sexual intercourse with Vaughn and before the second act of sexual intercourse with him that evening, the complainant took a short trip with another man to Lafayette. When asked why she did not take this opportunity to remove herself permanently from Vaughn's house, she answered that she wanted to return there for her clothing.
During his cross-examination of the complainant the defense counsel was prevented, by state objections sustained by the court, from inquiring into her prior sexual conduct with another man in Grant Parish while she was en route to Alexandria. Although the defense attorney apprised the trial court of the nature of the evidence and its relevance to the defense that the complainant had consented to the sexual intercourse at issue, the trial court accepted the prosecutor's contentions that such testimony should be excluded under the state's rape shield law.
The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The confrontation clause of our state constitution directly affords each accused the right "to confront and cross-examine the witness against him,..." La. Const. art. 1 § 16.
Confrontation means more than being allowed to confront the witnesses. Our state constitution expressly guarantees a defendant the right to cross-examine adverse witnesses. Id. The U.S. Supreme Court cases construing the clause hold that a primary *1262 interest secured by it is the right of cross-examination. Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (citing Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness; Davis, supra, 415 U.S. at 316, 94 S.Ct. at 1110; State v. Hillard, 398 So.2d 1057 (La.1981); State v. Toledano, 391 So.2d 817 (La.1980).
The state contends that the cross-examination was correctly precluded under the rape shield law, La.R.S. 15:498, which provides:
Evidence of prior sexual conduct and reputation for chastity of a victim of rape or carnal knowledge shall not be admissible except for incidents arising out of the victim's relationship with the accused.
The state further argues that the trial court ruling did not deprive Vaughn of his right to confront and cross-examine his accuser.
Notwithstanding worthy legislative aims, rules excluding evidence cannot be mechanistically applied to deny admission of highly reliable and relevant evidence critical to an accused's defense. See Davis, supra; Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Although the Supreme Court's cases fail to provide any rule for determining when the Sixth Amendment compels the admission of evidence, they imply that a "balancing of interests" approach to each case should be used to reconcile the competing interests involved. Davis, supra, 415 U.S. at 319, 94 S.Ct. at 1112; State v. Dawson, 392 So.2d 445, 449 (La.1980); State v. DeCuir 364 So.2d 946, 948-949 (La.1978) (concurring opinion); Note, 40 La.L.Rev. 268, 274 (1979).
By excluding evidence of a rape complainant's reputation for chastity or sexual conduct with any person other than the accused, La.R.S. 15:498 serves important goals: it abates the victim's ordeal at trial, lessens the possibility of unjust influence by inflammatory evidence, and encourages reports of rape. Thus, in balancing the invocation of the shield against the right of confrontation in a particular case, the shield should be given weight according to the degree to which it fulfills the purposes of the rape shield law in that case. Against this in each case must be weighed the extent to which the rape shield would exclude evidence which is genuinely relevant, highly probative, and critical to the accused's defense. If the rape shield law in the particular case fails to serve its purpose, overreaches its legitimate aim, or trenches upon the right to a fair trial, it must yield to the confrontation guarantees of our state and federal constitutions.
Applying this balancing approach, we conclude that the defendant was deprived of his constitutional right to confront and cross-examine witnesses because the cross-examination attempted by defense counsel was reasonably calculated to elicit evidence which was genuinely relevant, highly probative, and critical to the defense; and because the rape shield law did not fully serve its purposes in this case. The excluded evidence would have tended to demonstrate the complainant's sexual promiscuity in the course of her running away from home. This evidence would have tended to show that her sexual intercourse with Vaughn was a part of this same pattern and was committed in furtherance of her running away from home. For this reason, and because she freely admitted to at least one act of consensual intercourse with Vaughn, the excluded evidence was highly probative of the proposition that each of her acts of intercourse with Vaughn was consensual. On the other hand, exclusion of the evidence in this case did not significantly promote the legitimate state interest *1263 in encouraging rape reports by insulating a rape victim's reputation for chastity from attack by evidence of sexual misconduct unrelated to the offense. Evidence of the complainant's conduct in engaging in the initial consensual act of intercourse with Vaughn, sleeping with him and two other women in the same bed, traveling with casual male acquaintances, and spending the night with two of them in a cabin was introduced without objection. Consequently, the complainant's reputation for chastity was discredited by the other evidence and was not afforded any real protection by the assertion of the rape shield law to exclude the cross-examination at issue. Furthermore, the conduct about which the defense wished to cross-examine was not totally unrelated to the charged offense. It allegedly occurred only five days before the offense, with another casual male acquaintance, during an earlier stage of her running away from home.
The failure to permit the cross-examination was not harmless error. Harmless error depends on there being no reasonable possibility that the evidence complained of might have contributed to the conviction and upon the reviewing court's ability to declare a belief that the error was harmless beyond a reasonable doubt. State v. Gibson, 391 So.2d 421 (La.1980). The scenario is that the complainant committed consensual sexual intercourse with defendant admittedly before and perhaps after the alleged rape. The complainant went on a trip to Lafayette before she had intercourse with the defendant for the last time. Despite the alleged rape and an opportunity to leave, she returned to defendant's home where she was vulnerable to further sexual advances. The consensual sexual act with another man in Grant Parish would have completed the pattern: The complainant quickly consummated sexual acts with men she barely knew in furtherance of her running away from home. Had the jury been sensitive to a pattern of consensual sex, they may have been reluctant to perceive that 51-year-old Vaughn exercised undue influence over the 15-year-old. Since such undue influence may have occurred to the jury, evidence discrediting the complainant's naiveté and showing a pattern of actual consent was highly relevant and probative.
We conclude there is a reasonable possibility that the error complained of here contributed to the conviction. Aside from the excluded evidence, the record contains substantial circumstantial evidence of her promiscuity and direct evidence of her consensual sexual intercourse with the defendant. We cannot say beyond a reasonable doubt that a reasonable jury would not have been persuaded to acquit the defendant after also hearing the excluded evidence.
The defendant's conviction and sentence are reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.
CALOGERO and WATSON, JJ., dissent and assign reasons.
BLANCHE, J., dissents for reasons assigned by WATSON, J.
LEMMON, J., subscribes to the opinion and assigns additional concurring reasons.
WATSON, Justice, dissenting.
The majority holds that LSA-R.S. 15:498, "the rape shield law", was erroneously applied in this case, violating defendant's constitutional right of confrontation. I disagree.
Defendant was allowed to cross-examine the prosecuting witness at length about the fact that she had spent at least one night in a cabin with two men shortly prior to the alleged rape, and also concerning the fact that she had sexual intercourse with the defendant by consent on at least two occasions close in time to the alleged rape. However, the majority concludes that defendant was denied a basic constitutional right by being prevented from examining the fifteen year old complainant about her sexual relations with some other man in Grant Parish while enroute to Alexandria.
*1264 The majority calls this evidence "genuinely relevant, highly probative and critical to the defense". Certainly it was not critical to the defense because the jury had heard substantial other evidence of the complainant's sexual promiscuity, including her consensual relations with defendant. Certainly it was not genuinely relevant or highly probative. The fact that a female has had sex with "A" does not tend to prove one way or the other whether she had sex with "B". The logic by which the excluded evidence becomes "highly probative" is not explained by the majority. In fact, it is not probative at all.
While confrontation is a fundamental constitutional right, the majority errs badly in reversing this conviction for failure to allow cross-examination concerning immaterial and non-probative matters.
Therefore, I respectfully dissent.
CALOGERO, Justice, dissenting.
The majority determines that Louisiana's rape shield law (La.R.S. 15:498) cannot be mechanically applied. Rather, a balancing approach must be utilized in determining whether its application in a given case will infringe upon a defendant's sixth amendment confrontation rights. I agree.
In this portion of the opinion the majority forges a standard which satisfies the constitutional right to confront one's accusers without declaring unconstitutional the rape shield law, a statute which serves legitimate state interests. Evidence which is "crucial," "critical," or "vital" to an accused's defense [Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974); Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) respectively] cannot constitutionally be excluded by the rape shield law regardless of the state interest advanced thereby.
Nevertheless, I dissent from the majority opinion because I disagree with the manner in which the balancing test has been applied in this case. The underlying primary rationale of rape shield laws is that evidence of the complainant's prior sexual history is irrelevant to the issue presented at a rape trial, which is whether or not the defendant forced the victim to engage in sexual intercourse. The admission of evidence of the victim's prior sexual conduct tends to confuse the issue in the trial by arousing the jury's prejudices, and perhaps emotions, in a case in which the evidence has little or no relevance. Such is the case here, in my opinion.
Defendant complains that he was not permitted to present evidence of a prior instance of voluntary sexual intercourse which the victim had engaged in five days before the alleged offense, and with a man other than defendant. The majority concludes that the evidence should have been admitted because it was "genuinely relevant, highly probative and critical to the accused's defense" in that it "would have tended to show that her sexual intercourse with Vaughn [defendant] was part of this same pattern and was committed in furtherance of her running away from home."
Just to the contrary, the excluded evidence was precisely the type of evidence at which the rape shield law is aimed. That is, the evidence would tend to arouse the jury's prejudices and distract their attention from the real issues. And, most importantly, it is irrelevant to the question of whether or not Vaughn forced the victim to have sexual intercourse with him on the occasion in question. The fact that a female may have consented to sexual intercourse with one male is too slight an indication to warrant the conclusion that she probably consented to sex with another male. Even if the jury heard evidence of a prior consensual act of sex with another man this would not have been predictive of the victim's later consent, or made her any less the subject of a rape by force. The contrary notion is just what the Legislature attempted to dispel when they passed the rape shield law. While the Legislature may not be within their constitutional prerogative to announce for court application evidentiary rules which fly in the face of logic or human experience, just the reverse *1265 is the case here. In this case the rape shield law and its underlying premise are sound.
The majority states that evidence of "[t]he consensual sexual act with another man in Grant Parish would have completed the pattern: the complainant quickly consummated sexual acts with men she barely knew in furtherance of her running away from home." While it may be true that the victim did consent to sex with casual acquaintances, this has nothing to do with the issue at trial, whether the defendant raped the victim on the occasion in question. The victim testified that she had had sexual intercourse with the defendant on the first night she met him and that it was with her consent. However, she further testified that three days later when she resisted his sexual advances, he forced her to have sexual intercourse without her consent by kicking her, knocking her against the dresser and pulling her hair. She also testified that later the same night, after taking a trip to Lafayette with another man, she returned to the defendant's house and again had sexual intercourse with defendant, but this time, because she feared another violent attack, she consented. The victim's entire involvement with the defendant, including voluntary sexual relations both before and after the alleged rape, is highly relevant and it was properly admitted at trial under the rape shield statute.[1] On the other hand evidence that the victim had sexual intercourse with another man five days before the offense, on the facts of this case, simply does not add anything to the question of whether or not defendant forced the victim to have sexual intercourse with him as alleged. In my view, evidence of prior voluntary sexual intercourse with a different man was properly excluded, and the confrontation clause not offended.
There are, of course, instances in which, on balance, prior sex with a different person, actually relevant, must be admitted, lest the confrontation clause be offended.[2] I simply disagree with the majority's conclusion that this is such an instance.
Bad cases sometimes make bad law. This may be the case here. Defendant was convicted by a jury of forcible rape and sentenced to fifteen years at hard labor, five years of which are without benefit of parole, probation, or suspension of sentence. And the fifteen year old victim, no model of chastity, was a runaway who had prior and later sexual relations with the defendant. If the court has trouble with the conviction a proper focus might be on whether a rational jury could have found defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (Although defendant did not raise the argument this Court can still review the record to determine whether the evidence was sufficient. State v. Raymo, 419 So.2d 858 (La.1982); State ex rel. Womack v. Blackburn, 393 So.2d 1216 (La.1981); Id., 1220 (Lemmon, J., concurring).) It should not, however, reverse the conviction and order a new trial while in the process disregarding the rape shield law, where on balance the confrontation clause is not offended.
*1266 LEMMON, Justice, concurring.
When a statute designed to protect a witness' interest in preventing embarrassing disclosures of the witness' past behavior precludes a defendant from offering evidence which is so highly probative of the witness' credibility that the evidence is necessary to a fair determination of defendant's guilt, the statute must yield to defendant's constitutional right to confrontation.
In State v. Toledano, 391 So.2d 817 (La. 1980), this court found that the statutes according confidentiality to records of juvenile adjudications must yield to the defendant's right to confront the witnesses against him by revealing juvenile adjudications which have a significant adverse effect on the witness' credibility. See Fed.R. Evid. § 609(d); State v. Hillard, 398 So.2d 1057 (La.1981).
In a case (such as the present one) involving the application of La.R.S. 15:498, it is necessary to balance the understandable legislative interest in preventing essentially irrelevant (or only marginally relevant) and potentially embarrassing disclosures about the rape victim-witness against defendant's Sixth Amendment right to challenge the credibility of the witness on the question of consent and to offer evidence in his defense which tends to establish consent. See Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).
This decision does not hold that the defendant may inquire into essentially irrelevant, unrelated and very embarrassing past sexual behavior of a person who alleges that she is a rape victim. However, when the defendant seeks to prove prior incidents which are distinctively similar to the conduct in question, particularly in terms of time, place and circumstances surrounding the conduct, then the prior incident's tendency to prove that the alleged victim behaved in a similar fashion on the occasion in question is enhanced to such a degree that excluding it would violate the confrontation rights of the accused. See Fed.R.Evid. § 412.
Just as in the case of other crimes evidence, the trial court must balance the probative value against prejudice. In cases of prior sexual behavior offered to prove consent, the trial court must balance the probative value of the evidence against its tendency merely to show the victim's general character with respect to chastity. To the extent that the evidence merely tends to show "unchaste" character, it should not be admitted, because the "circumstantial use" of character evidence is generally not favored. See Fed.R.Evid. §§ 404, 405. However, if the other consensual sexual behavior is so distinctively similar to the incident for which defendant was charged to enhance the probability that the victim consented, then the statute's laudable purpose in protecting rape victims from possibly embarrassing disclosures of prior sexual conduct (and thereby encouraging persons to report rape) must yield to defendant's Sixth Amendment rights. See State v. Decuir, 364 So.2d 946 (La.1978), Dennis, J., concurring.

ON REHEARING
BLANCHE, Justice.
In our original opinion, we reversed defendant's conviction of forcible rape for the reason that defendant's right to confront the witnesses against him was unconstitutionally restricted when he was not allowed to cross-examine the victim as to a single instance of prior sexual conduct with another individual. We granted the rehearing to consider whether, in this case, the Confrontation Clause of the Sixth Amendment was in fact impaired by the application of La.R.S. 15:498 to defendant's cross-examination of the victim. We find that it was not, and reinstate the trial court's verdict and sentence for the following reasons.
The facts of the case were fully stated in this Court's original opinion, and need only be stated briefly here. The victim, a fifteen year old girl, left Shreveport on September 12, 1980 in the company of one Bret Holden, a man she had met the same day. *1267 Holden, the victim and another girl hitchhiked to Alexandria, where Holden and the victim spent one night together in a cabin. Two days later, the victim met the defendant, who offered her food and lodging. On September 15, 1980, the victim engaged in consensual sexual intercourse with the defendant. Three days later, the victim resisted the defendant's advances and was forced to have intercourse with the defendant in the presence of two other girls. Later that day, the victim consented to sex with the defendant, purportedly because she feared being beaten.
At trial, counsel for defendant was able to elicit from the victim the fact that she had voluntarily engaged in sexual intercourse with defendant both before and after the alleged rape. However, when defense counsel attempted to cross-examine the victim as to the night she spent with Holden, the trial court sustained the state's objection that such an inquiry into the victim's sexual conduct was expressly prohibited by the rape shield law. La.R.S. 15:498.
La.R.S. 15:498 was enacted by the legislature as a measure designed to encourage rape victims to testify by limiting the extent to which a defense lawyer could inquire into the details of the victim's private life. On its face, the statute is couched in somewhat absolute terms, stating that:
Evidence of prior sexual conduct and reputation for chastity of a victim of a rape or carnal knowledge shall not be admissible except for incidents arising out of the victim's relationship with the accused.
Strictly construed, R.S. 15:498 would indicate that evidence of prior sexual conduct is considered inadmissible with the single exception of relations with the accused. However, as this Court recognized in State v. Langendorfer, 389 So.2d 1271 (La.1980), there are instances where evidence of prior sexual conduct is admissible. In Langendorfer, supra, evidence was admissible to show that sperm found in the victim was the victim's husband's. The Court noted tht only the reputation for unchastity was intended to be excluded, and that relevant physical evidence exculpating the defendant must be admitted. 389 So.2d at 1274. See also Rule 412 Federal Rules of Evidence.
Defendant urges that evidence of repeated promiscuity ought to constitute another instance where prior sexual conduct is admissible. Otherwise, according to defendant, R.S. 15:498 would effectively deprive a defendant of his right to confront the witnesses against him.
The right to confrontation is recognized in both the state and federal constitutions. La. Const. Art. I, § 16, U.S. Const. Amend. VI. This right in Louisiana expressly includes the right to cross-examine the prosecution's witnesses. La. Const. Art. I, § 16. See also Mattox v. U.S., 156 U.S. 237, 244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895) and Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).
As we stated on original hearing, rules such as R.S. 15:498 which exclude certain types of evidence "cannot be mechanistically applied to deny admission of highly reliable and relevant evidence critical to an accused's defense." See Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Clearly, where highly relevant evidence is available, the State's need to protect the victim from embarrassing cross-examination must be weighed against the probative value of the evidence to determine whether the right of confrontation is being infringed.[1]
However, where the evidence sought to be admitted is not relevant, the right to confrontation is not affected and there is no need to impose a balancing test. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. La.R.S. 15:441.
*1268 We conclude that evidence of a single instance of sexual intercourse between the victim and another individual 5 days prior to the rape is not relevant to a determination of whether the act with defendant was consensual. The fact that the victim consented to intercourse with another man is not probative of her subsequent conduct with defendant. Rather, were the evidence to be admitted, the victim would be confronted with the accusations of her own chastity, which cannot be shown to have any relation to the crime of rape.
In holding that the single instance of conduct in this case was not relevant to a determination of whether a rape occurred, we do not hold that a victim's prior sexual history may never be relevant and subject to cross-examination. Nevertheless, before such evidence may be held admissible, the defendant must clearly demonstrate that the evidence of prior sexual conduct is genuinely probative of the issue of consent, rather than a reflection of the victim's promiscuity.

DECREE
For these reasons, the judgment of this court on original hearing is reversed, and the conviction and sentence of the defendant, John Vaughn, are reinstated. REVERSED; original verdict reinstated.
WATSON, J., concurs but does not endorse the language of footnote one concerning matters not before the court.
DENNIS, J., dissents for the reasons assigned by the original majority opinion.
LEMMON, J., dissents.

ON APPLICATION FOR REHEARING
PER CURIAM.
The court has considered all of the assignments of error urged by the defendant to this Court and has found them to be without merit.
NOTES
[*] Bailes, J. sitting for Justice Marcus.
[1] La.R.S. 15:498: "Evidence of prior sexual conduct and reputation for chastity of a victim of rape or carnal knowledge shall not be admissible except for incidents arising out of the victim's relationship with the accused." (Emphasis provided.)
[2] Examples of situations in which evidence of prior sexual conduct is likely to be so crucial, critical, or vital to the accused's defense that its admission is constitutionally required are: (1) where the past sexual acts are between the victim and the defendant (as is expressly permitted under La.R.S. 15:498); (2) where the past sexual acts are so distinctively similar as to constitute a modus operandi on the part of the victim, that is, that she has alleged rape before under similar circumstances which proved consensual; (3) where the prior sexual acts are of such frequency as to establish a habit or pattern of indiscriminate sex; (4) where the prosecution has presented evidence of the victim's chastity which is not accurate; or (5) where the accused is attempting to defend on the basis that some other person is responsible (another source of the semen or injury). See 40 La.Law Review, 268; Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Colum.L.Rev. 1, 98 (1977). These examples do not necessarily comprise an exclusive list.
[1] Instances where prior sexual conduct could be relevant might exist, for example, where the victim has a history of false reporting of rapes, or where the victim has placed her chastity at issue and the evidence is offered solely for impeachment purposes.